WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re ) | |
| ) | |
| DARRELL CARLTON BLOMBERG, ) | |
| ) | |
| Debtor(s) ) | |
| ) | |
| _____) | |
| ) | |
| DARRELL CARLTON BLOMBERG, ) | |
| ) | |
| Appellant, ) | |
| ) | No. 2:13-cv-2187-HRH |
| vs. ) | |
| ) | |
| EDWARD J. MANEY, Chapter 13 Trustee, ) | |
| et al., ) | Bankruptcy Court |
| ) | No. 2:11-bk-24029-EPB |
| Appellees. ) | |
| _____) | |

O R D E R

Darrell Carlton Blomberg, appearing pro se, appeals the bankruptcy court's order denying his motion to vacate and the bankruptcy court's order denying his motion for a new trial. Oral argument was requested and has been heard.

Background

Appellant is Darrell Carlton Blomberg.  Appellees are Edward J. Maney, Chapter 13 Trustee; Bank of America NA (BANA); and the United States Trustee.

On May 24, 2005, Blomberg borrowed $269,500 from Countrywide Home Loans, Inc. to purchase a single family residence located at 912 E. Cambridge Avenue, in Phoenix, Arizona.[1]  The loan was evidenced by a Note and secured by a Deed of Trust.[2]  Fannie Mae bought Blomberg's loan on June 1, 2005.

After Blomberg filed for bankruptcy, BANA filed a proof of claim for $292,933.66.[3] BANA claimed that Blomberg had not made any payments on his loan since April 1, 2008 and that he was $100,919.86 in arrears.[4]  Attached to the proof of claim was a Corporation Assignment of Deed of Trust Arizona in which Mortgage Electronic Registration Systems, Inc. (MERS) assigned all beneficial interest in the Deed of Trust as well as the Note, including the right to monies due under the Note to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP.[5]  Also attached to the proof of claim was a Texas Certificate of Merger stating that on July 1, 2011, BAC Home Loans Servicing, LP had

---

[1] Excerpt of Record at 375, Vol. 3, Docket No. 23-2.

[2] Excerpt of Record at 364, Vol. 3, Docket No. 23-2.

[3] Excerpt of Record at 442, Notice of Errata, Docket No. 28.

[4] Excerpt of Record at 443, Notice of Errata, Docket No. 28.

[5] Excerpt of Record at 446, Notice of Errata, Docket No. 28.

merged into BANA.[6] Also attached was the Deed of Trust[7] and the Note.[8] The Note, which was certified to be a true and correct copy of the original Note, was not endorsed.[9]

On January 14, 2013, BANA moved for relief from the automatic stay.[10] In the motion, BANA contended that it "services the loan" and that if "a foreclosure action is commenced on the mortgage property, the foreclosure will be conducted in the name of Movant."[11] BANA further contended that it "directly, or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. The Movant is the original mortgagee or beneficiary or assignee of the Deed of Trust."[12] Attached as an exhibit to the motion was a copy of the Note that had been endorsed in blank.[13] In a Supplemental Declaration, Celia Mora, an Assistant Vice President at BANA, averred that "[o]n 11/30/2009, [MERS] (as beneficiary under the Deed of Trust) assigned all rights and interests in the Deed of Trust to BAC Home Loan Servicing, LP FKA Country-

---

[6]Excerpt of Record at 447, Notice of Errata, Docket No. 28.

[7]Excerpt of Record at 452-462, Notice of Errata, Docket No. 28.

[8]Excerpt of Record at 463-464, Notice of Errata, Docket No. 28.

[9]Id.

[10]Excerpt of Record at 414, Notice of Errata, Docket No. 28.

[11]Excerpt of Record at 415, Notice of Errata, Docket No. 28.

[12]Id.

[13]Excerpt of the Record at 432-433, Notice of Errata, Docket No. 28.

wide Homes Loans Servicing, LP" and that "BAC Home Loan Servicing, LP subsequently merged into" BANA.[14]  Mora further averred that "Countrywide Home Loans, Inc. endorsed the Note to blank making the note bearer paper.  [BANA] is in possession of the Note and thus is the proper party entitled to enforce the Note."[15]

Blomberg objected to BANA's motion for relief from the automatic stay, arguing that BANA lacked standing to seek such relief because BANA had failed to establish that BAC Home Loans Servicing, LP merged into BANA.[16]

The bankruptcy court granted BANA's motion for relief from the automatic stay after a hearing because "there is no legitimate dispute that [BANA] is in possession of the relevant promissory note (which was endorsed in blank) [and] a properly assigned deed of trust is on the record and the entitlement to payments rests with" BANA.[17]  In its March 4, 2013 order terminating the automatic stay, the bankruptcy court ordered that

> any and all stays against lien enforcement, including the automatic stay of 11 U.S.C. § 362(a) and the automatic injunction of 11 U.S.C. § 524(a), are hereby vacated with respect to the property generally described as 912 E. Cambridge Ave., Phoenix, AZ 85006, and Movant, its assignees and/or succes-

---

[14]Excerpt of Record at 204, Vol. 2, Docket No. 24-1.

[15]Id.

[16]Excerpt of Record at 219-233, Vol. 2, Docket No. 24-1.

[17]Minute Entry/Order (dated February 22, 2013), Docket No. 61, Case No 2:11-bk-24029-EPB.

>  sors in interest, may proceed with a foreclosure of and hold a Trustee's sale of the subject property pursuant to the state law, and thereafter commence any action necessary to obtain complete possession of the subject property without further court order or proceeding being necessary.[18]

On March 18, 2013, Blomberg filed a motion to vacate the bankruptcy court's March 4 order.[19] Blomberg argued that BANA did not have any right, title, or interest in the Note or Deed of Trust but had merely been the servicer on the loan. In short, Blomberg argued that BANA did not have standing to seek relief from the automatic stay. The bankruptcy court treated Blomberg's motion to vacate as a motion for reconsideration and denied the motion on April 2, 2013.[20]

On March 19, 2013, Blomberg filed his objection to BANA's proof of claim, in which he argued that BANA did not have standing to file a proof of claim because it had not established that it was a "creditor."[21] The bankruptcy court held an evidentiary hearing on June 19, 2013. BANA brought the original endorsed Note to court,[22] which was admitted

---

[18]Order Terminating Automatic Stay [etc.] at 2, Docket No. 67, Case No. 2:11-bk-24029-EPB.

[19]Excerpt of Record at 140, Vol. 2, Docket No. 24-1.

[20]Docket No. 86, Case No. 2:11-bk-24029-EPB.

[21]Excerpt of Record at 124, Vol. 2, Docket No. 24-1.

[22]Excerpt of Record at 5, Vol. 1, Docket No. 23-1.

into evidence.[23] The bankruptcy court cast Blomberg's objection as "based on one sole allegation that [BANA] does not possess the right to payment under the note."[24] The bankruptcy court overruled Blomberg's objection because BANA,

> the purported creditor has produced an original valid promissory note endorsed in blank and establishes under the applicable Arizona statute[s] and case law interpreting them that the purported creditor is the holder of the note and entitled to file a proof of claim.[[25]]

On July 5, 2013, Blomberg moved for a new trial.[26] Blomberg argued that the bankruptcy court erred in holding that BANA was entitled to file a proof of claim because he contended that BANA held the Note in a custodial capacity only. The bankruptcy court denied Blomberg's motion for a new trial on October 10, 2013.[27]

On October 28, 2013, Blomberg filed the instant appeal.[28] On October 15, 2014, the bankruptcy court ordered that Blomberg's Chapter 13 petition would be dismissed on

---

[23]Excerpt of Record at 16, Vol. 1., Docket No. 23-1.

[24]Excerpt of Record at 50, Vol. 1., Docket No. 23-1.

[25]Id.

[26]Excerpt of Record at 81, Vol. 2, Docket No. 24-1.

[27]Exhibit A, Notice of Appeal.

[28]Docket No. 1.

October 23, 2014 unless Blomberg obtained a stay from this court.[29]  Blomberg filed an emergency motion for a stay.[30]  This court granted the motion for a stay "until such time as a hearing can be held on the motion to stay."[31]  On October 22, 2014, this court set a combined hearing on the stay motion and on Blomberg's appeal for October 30, 2014.[32]  Also on October 22, 2014, the bankruptcy court entered an order "vacating [the bankruptcy] Court's Minute Entry Order dated October 15, 2014, granting dismissal of this case effective October 23, 2014.[33]  Blomberg then filed a motion with this court seeking to vacate the portion of the oral argument scheduled for October 30 that was to address the stay motion.[34]  Oral argument was heard on October 30, 2014 as to Blomberg's appeal only.

## Standard of Review

The court reviews "de novo whether a party has standing" to file a proof of claim. In re Allen, 472 B.R. 559, 564 (9th Cir. BAP 2012).  "A bankruptcy court's determinations regarding stay relief are reviewed for an abuse of discretion[.]"  In re Veal, 450 B.R. 897, 915 (9th Cir. BAP 2011).  "The abuse of discretion test involves two distinct determinations:

---

[29]Minute Entry, Appendix E, Emergency Motion, Docket No. 30.

[30]Docket No. 30.

[31]Order from Chambers at 1, Docket No. 32.

[32]Order from Chambers at 1, Docket No. 33.

[33]Appendix B, Emergency Motion, Docket No. 36.

[34]Docket No. 36.

first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the legal analysis were clearly erroneous." Id.

## Discussion

"[A] party has standing to prosecute a proof of claim involving a negotiable promissory note secured by real property if, under applicable law, it is a 'person entitled to enforce the note,' as defined by the Uniform Commerical Code." In re Veal, 450 B.R. at 902. In other words, in order to qualify as a creditor entitled to filed a proof of a claim, BANA "must be a 'person entitled to enforce' the Note...." Id. at 920. "Under § 362(d), the bankruptcy court may grant relief from the automatic stay '[o]n request of a party in interest.'" Id. at 913. "[A] party has standing to seek relief from the automatic stay if it has a property interest in, or is entitled to enforce or pursue remedies related to, the secured obligation that forms the basis of its motion." Id. at 902. The "party seeking relief need only establish that it has a colorable claim to enforce a right against property of the estate." Id. at 914-15. To show a colorable claim in the Note, BANA has "to show it ha[s] some interest in the Note, either as a holder, as some other 'person entitled to enforce,' or that it was who held some ownership or other interest in the Note." Id. at 917. Thus, the issue here is whether BANA was a "person entitled to enforce" the Note.

Blomberg, however, contends that the issue here is not whether BANA can enforce the Note but rather whether BANA has standing to enforce a debt. Blomberg seems to

contend that only a "creditor" has standing to enforce a debt and that the bankruptcy court failed to make a determination as to whether BANA was a "creditor" or not.

The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10). "'Claim' is defined very broadly within the Code to mean any 'right to payment,' whether fixed, contingent, matured, disputed, secured, and so on." In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009) (quoting 11 U.S.C. § 101(5)). "[T]he term 'debt' means 'liability on a claim.'" Id. (quoting 11 U.S.C. § 101(12)). "The terms 'debt' and 'claim' are coextensive, 'flip sides to the same coin.'" Id. (quoting In re Rifkin, 124 B.R. 626, 628 (Bankr. E.D.N.Y. 1991)). BANA claims that Blomberg owes it $292,933.66.[35] This "claim" constitutes a "debt", a debt that BANA would be entitled to enforce, if BANA establishes that it has a "right to payment." In a case such as this involving a negotiated promissory note secured by real property, BANA can establish that it has a right to be paid by showing that it is a "person entitled to enforce" the note. In re Veal, 450 B.R. at 902, 907. Thus, contrary to Blomberg's contention, the issue here is whether BANA is a "person entitled to enforce" the Note.

Under Article 3 of the UCC, "the ability to enforce a particular note ... is held by the person 'entitled to enforce' the note." Id. at 910. One way "in which a person can acquire

---

[35]Excerpt of Record at 442, Notice of Errata, Docket No. 28.

'person entitled to enforce' status," is to be the "'holder' of the note." Id. at 910-11. "[A] person is a holder if the person possesses the note and either (i) the note had been made payable to the person who has it in his possession or (ii) the note is payable to the bearer of the note." Id. at 911.

Here, BANA has possession of the Note, which was endorsed in blank. Under Arizona law, a person who possesses a Note that is endorsed in blank is entitled to enforce the note. In re Rhoads, 487 B.R. 214, 220 (D. Ariz. 2013). Thus, BANA had standing because it was entitled to enforce the Note. Blomberg's arguments to the contrary are unavailing and the court declines Blomberg's invitation to make new law on the standing issues raised in this appeal.

Blomberg first argues that BANA was not the "holder" of the Note because the Note that was attached to BANA's proof of claim was not endorsed in blank and BANA never amended its proof of claim. Blomberg argues that because BANA never amended its proof of claim, the unendorsed Note is the only relevant note.

BANA argues that it was not required to amend its proof of claim in order for the bankruptcy court to consider the endorsed Note. "A proof of claim that is filed in accordance with the Federal Rules of Bankruptcy Procedure is 'prima facie evidence of the validity and the amount of the claim.'" In re AFY, Inc., 463 B.R. 483, 488 (8th Cir. BAP 2012) (quoting Fed. R. Bankr. P. 3001(f)). "To overcome a claim's presumptive validity, an

objection must be supported by substantial evidence." Id. "The claimant must provide additional evidence of the claim's validity if the party objecting to the claim rebuts its presumptive validity." Id. Because Blomberg offered evidence in an attempt to overcome the presumptive validity of its claim, BANA argues that it was entitled to produce the endorsed Note as additional evidence without amending its proof of claim.

Blomberg argues that BANA's reliance on In re AFY is misplaced because BANA did not file its proof of claim in accordance with the Federal Rules of Bankruptcy. Blomberg points out that "Rule 3001(b) requires that a [proof of] claim be executed by the creditor or its authorized agent." In re Veal, 450 B.R. at 922. In order to obtain the presumption of validity in Rule 3001(f), "the party who filed the proof of claim must show that it is either a creditor or the creditor's authorized agent...." Id. Blomberg argues that because BANA is not a "creditor", its proof of claim never obtained the presumption of validity. Blomberg points out that even the bankruptcy court never referred to BANA as a "creditor, but rather only as a "purported creditor."[36]

But even if BANA's claim were not entitled to the presumption of validity in Rule 3001(f), that does not mean that BANA was not entitled to offer the endorsed Note into evidence. As one court has observed, "when a claimant fails to comply with Bankruptcy Rule 3001 and Official Form 10 by including all of the required information, the claimant

---

[36]Excerpt of Record at 50, Vol. 1, Docket No. 23-1.

cannot, in response to an objection, rest on its proof of claim and must instead come forward with sufficient evidence of the claim's validity and amount." In re Leverett, 378 B.R. 793, 800 (Bankr. E.D. Tex. 2007). Here, Blomberg objected to the validity of BANA's claim arguing that BANA did not have standing to file a proof of claim and submitted evidence in support of his argument. In turn, BANA was required to present evidence to attempt to establish that it did in fact have standing, which it did by bringing the original endorsed Note to court, a copy of which the bankruptcy court admitted into evidence at the trial. Blomberg cites to no authority that suggests that the bankruptcy court could not admit such evidence or that suggests that the only way the bankruptcy court could consider the endorsed Note was if BANA amended its proof of claim. The unendorsed Note is not the only relevant Note in this case. The bankruptcy court properly considered the endorsed Note when determining whether BANA had standing.

Blomberg next argues that BANA does not have any right to enforce the Note because it does not own his debt. Because BANA does not own the debt, Blomberg argues that BANA could not be considered a "creditor." Under the Truth in Lending Act, a creditor is

> a person who both regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

12 C.F.R. § 226.2(a)(17)(i). Because BANA is not the person to whom the debt was initially payable on the face of the Note, Blomberg argues that BANA is not a "creditor" and thus had no standing to seek relief from the automatic stay or to file a proof of claim.

However, it does not matter whether BANA owned Blomberg's debt because under Arizona law, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument...." A.R.S. § 47-3301; see also, In re Veal, 450 B.R. at 912 & n.25 (noting that the owner of a note might not be a "person entitled to enforce" and that the "converse is also true: one can be a 'person entitled to enforce' without having any ownership interest in the negotiable instrument"). Moreover, whether BANA meets the definition of a "creditor" as that term is defined in the TILA has no bearing on whether BANA was a "creditor" under the Bankruptcy Code. In re Carr, 18 B.R. 794, 796 (Bankr. E.D. Pa. 1982).

Blomberg next argues that the Note contains limiting language that precludes BANA from being the "holder" of the Note. The Note states that "the Lender may transfer this Note. The Lender or anyone who takes the Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"[37] Blomberg argues that because BANA never took the Note by transfer, it cannot be the "Note Holder." Blomberg contends that the term "transfer" in the Note means a "transfer" under the UCC.

---

[37] Excerpt of Record at 463, Notice of Errata, Docket No. 28.

Under the UCC, "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." A.R. S. § 47-3203(A). Blomberg argues that in order for a transfer to take place, the issuer has to receive some consideration from the transferee. See A.R.S. § 47-3302(A)(2)(c) (in order to be a "holder in due course", the holder of an instrument must have taken the instrument "for value"). Blomberg argues that because there is no evidence in the record that BANA paid Countrywide for the Note, there was no statutory transfer.

BANA does not have to be a "transferee" in order to have standing but rather it only needs to be a "person entitled to enforce" the Note, which it was because it had actual possession of the Note, which was endorsed in blank. The court in Mesina v. Citibank, NA, Case No. 10–2304 RTL, 2012 WL 2501123, at *2-3 (Bankr. D.N.J. June 27, 2012), rejected a similar argument based on similar language in the note in question there. The Mesina court explained that

> [a] holder of the Note is entitled to enforce it. If the Creditor can prove that it is in possession of the Note endorsed in blank, then as a holder it is entitled to enforce the Note. The Creditor is not required to prove the details of each transfer in the chain of title.

Id. at *3.

But even assuming that "transfer" as that term is used in the Note means a statutory transfer under the UCC and that BANA had to be a transferee in order to enforce the Note, Blomberg's argument fails because there was a statutory transfer here. "The process of transfer is called 'negotiation[.]'" In re Veal, 450 B.R. at 911 n.23. Under the UCC, "'[n]egotiation means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." A.R.S. § 47-3201(A). "[I]f an instrument is payable to bearer, it may be negotiated by transfer of possession alone." A.R.S. § 47-3201(B). More specifically, "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone...." A.R.S. § 47-3205(B). Because BANA had actual possession of the Note that had been endorsed in blank, the Note had to have been negotiated, or transferred, to BANA. And contrary to Blomberg's argument, BANA was not required to take the Note for value in order for there to be a statutory transfer. Under the UCC, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession," A.R.S. § 47-1201(B)(21)(a), while a "holder in due course" is a specific type of "holder." A.R.S. § 47-3302. In other words, not every "holder" is a "holder in due course." BANA could be the "holder" of the Note as a result of a statutory transfer even if it were not a "holder in due course."

Blomberg next argues that BANA's contention that BAC Home Loans Servicing, LP merged into BANA is incorrect and thus BANA cannot have acquired any rights under the Note based on BAC Home Loans Servicing, LP's connection to the Note. As proof of the merger, BANA attached a Certificate of Merger issued by the Texas Secretary of State to its proof of claim.[38] Blomberg argues that this is not evidence of the proposed merger because BANA is a depository institution insured by the FDIC and the Federal Deposit Insurance Act requires that "[e]xcept with the prior written approval of the responsible agency, ... no insured depository institution shall ... merge or consolidate with any noninsured bank or institution[.]" 12 U.S.C. § 1828(c)(1)(A). Blomberg argues that nothing in the Certificate of Merger indicates that BANA had obtained approval from the FDIC for the merger. Blomberg points out that in July 2011, BANA received conditional approval from the Office of the Comptroller of the Currency for the merger pursuant to 12 U.S.C. § 215a-3, but the OCC noted that BANA still needed to obtain approval from the FDIC for which it had applied.[39]

However, it is irrelevant whether the merger actually occurred because BANA had standing even if there was no merger. BANA came into court bearing the original Note endorsed in blank, which made it a "person entitled to enforce" the Note. As a "person

---

[38]Excerpt of Record 447, Notice of Errata, Docket No. 28.

[39]Excerpt of Record at 339-341, Vol. 2, Docket No. 24-1.

entitled to enforce" the Note, BANA had standing to seek relief from the automatic stay and to file a proof of claim.

Blomberg next argues that BANA only holds the Note in a custodial capacity because it is the loan servicer for Fannie Mae. BANA identified itself as the loan servicer for the investor,[40] which BANA identified as Fannie Mae.[41] Fannie Mae's Servicing Guide provides that "[a]ll records pertaining to mortgage loans sold to Fannie Mae," including notes, "are at all times the property of Fannie Mae and any other owner of a participation interest in the mortgage loan[.]"[42] The Servicing Guide further provides that "[a]ny of these documents and records in possession of the mortgage loan originator, seller, or servicer ... are retained in a custodial capacity only."[43] Blomberg argues that one who holds an instrument in a custodial capacity only for the beneficial owner has no legal entitlement to enforce the instrument. Because BANA only held the Note in a custodial capacity, Blomberg argues that BANA had no legal entitlement to enforce the Note.

This argument fails. BANA is entitled to enforce the Note even if it only holds the Note in a "custodial capacity." See In re Smith, 509 B.R. 260, 268 (Bankr. N.D. Cal. 2014)

---

[40]Excerpt of Record at 109, Vol. 2, Docket No. 24-1.

[41]Excerpt of Record at 112, Vol. 2, Docket No. 24-1.

[42]Excerpt of Record at 263, Vol. 2, Docket No. 24-1.

[43]Excerpt of Record at 264, Vol. 2, Docket No. 24-1.

(internal citation omitted) (because "Citi is holding the Note as custodian for Freddie Mac[,]" Citi is entitled to enforce the Note); In re Meyer, 506 B.R. 533, 538-539 (Bankr. N.D. Cal. 2014) (" Based upon the evidence, the Court concludes that the holder of the Note is Wells Fargo, as custodian for U.S. Bank").

Blomberg next argues that because there is no proof that the merger occurred, BANA falsely listed itself as a "creditor" on the proof of claim, which means that the proof of claim does not comply with Rule 3001. See In re Bello, Case Nos. SC–11–1541–JuBaPa, 10–16981, 10–90528, 2013 WL 2367796, at *5 (9th Cir. BAP May 30, 2013) (filing a false proof of claim violates Rule 3001). But, regardless of whether there was a merger, BANA is Blomberg's "creditor." As the court in In re Veal observed, in order to qualify as a "creditor" entitled to file a proof of claim, a party "must be a 'person entitled to enforce' the Note...." In re Veal, 450 B.R. at 920. Because it is in possession of the Note endorsed in blank, BANA is a "person entitled to enforce" the Note and thus BANA is a "creditor."

Blomberg next argues that BANA's proof of claim is ineffective because Jessica Kennedy misrepresented her authority to sign the proof of claim. A proof of claim must be signed by the person making the claim or that person's authorized agent. Kennedy signed the proof of claim as attorney for claimant. Blomberg seems to be arguing that Kennedy was required to provide some proof, beyond simply stating that she was BANA's attorney, that she was authorized to sign the proof of claim. This argument may be based

on the statement in the signature box on the proof of claim form that reads "Attach copy of power of attorney, if any."[44]

To the extent that Blomberg is arguing that Kennedy was required to file a power of attorney with the proof of claim, such an argument fails. Rule 9010 provides that "[t]he authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be evidenced by a power of attorney conforming substantially to the appropriate Official Form." In other words, an attorney can file a proof of claim without filing a power of attorney.

Finally, Blomberg argues that BANA cannot claim any right to enforce the Note pursuant to the Deed of Trust because BANA never acquired a beneficial interest in the Deed of Trust. Attached to BANA's proof of claim was an assignment by MERS transferring the beneficial interest in the Deed of Trust to BAC Home Loans Servicing, LP.[45] Blomberg argues that this beneficial interest never transferred to BANA because there is no evidence that BAC Home Loans Servicing actually merged into BANA. Blomberg also argues that the transfer would have been ineffective anyway because it was an assignment without consideration. But, whether the assignment of the Deed of Trust was valid or not

---

[44]Excerpt of Record at 442, Notice of Errata, Docket No. 28.

[45]Excerpt of Record at 446, Notice of Errata, Docket No. 28.

is irrelevant because the Note, not the Deed of Trust, confers standing in bankruptcy court to file a proof of claim or to seek relief from the automatic stay.

## Conclusion

Based on the foregoing, the bankruptcy court's orders denying Blomberg's motion to vacate and Blomberg's motion for a new trial are affirmed. All pending motions in this case are denied as moot. The clerk of court shall enter judgment accordingly.

DATED at Anchorage, Alaska, this 31st day of October, 2014.

/s/ H. Russel Holland  
United States District Judge